**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Ch. 11 |
| | ) | |
| DMK PHARMACEUTICALS CORP et al., | ) | |
| | ) | Case No. 24-10153 (MFW) |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| DMK PHARMACEUTICALS CORP. and | ) | Adv. No. 24-50070 (MFW) |
| ADAMIS PHARMACEUTICALS CORP. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CATALENT BELGIUM, S.A. and | ) | Re: Adv. D.I. 1, 28, |
| CATALENT PHARMA SOLUTIONS, INC. | ) | 29, 39, 40, 45, 48 |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION**</u>[1]

Before the Court is the Motion of Catalent Belgium, S.A. and

Catalent Pharma Solutions, Inc. (collectively, the "Defendants")

to Compel Arbitration and to Dismiss the Complaint and the Motion

of DMK Pharmaceuticals Corporation ("DMK") as futile and Adamis

Pharmaceuticals Corporation ("Adamis") (collectively, the

"Plaintiffs") for Leave to Amend their Complaint.[2]  For the

reasons stated below, the Court will grant in part and deny in

---

[1]   The Court is not required to state findings of fact or
conclusions of law pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure.  Instead, the facts recited are those well-
pled allegations in the Complaint which must be accepted as true
for the purposes of this Motion to Dismiss.  <u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678 (2009).

[2]   Adv. D.I. 28 & 39.  References to the docket in the
adversary proceeding are to "Adv. D.I.#," while references to the
docket in the main bankruptcy case are to "D.I. #."

part the Motion to Compel Arbitration and to Dismiss and will
grant in part and deny in part the Motion to Amend.

I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

DMK and its affiliated subsidiaries (collectively, the
"Debtors") were a family of clinical stage neuro-biotechnology
pharmaceutical companies that own various drug therapies.[3]  One
of the Debtors' products, SYMJEPI, was an injectable epinephrine
product approved by the FDA for the emergency treatment of
allergic reactions (Type 1) including anaphylaxis.[4]

On August 13, 2015, a predecessor to DMK[5] entered into a
supply agreement with Catalent Belgium S.A. ("Catalent Belgium")
for a five-year term, automatically extended for two successive
two-year terms (the "Supply Agreement").[6]  On May 18, 2020, the
same entity entered into a quality agreement with Catalent Pharma
Solutions, Inc. ("Catalent Pharma") for the manufacture, release
testing, and stability testing of SYMJEPI (the "Quality
Agreement").[7]  All formulations of SYMJEPI and filling processes

---

[3]    D.I. 4 ¶ 9.

[4]    <u>Id.</u> ¶ 16.

[5]    The signatory to the Supply Agreement was Adamis, which was
subsequently merged into Aardvark Merger Sub, Inc., which changed
its name to DMK.  Adv. D.I. 1 ¶¶ 9-10, 19.

[6]    <u>Id.</u> ¶ 19.

[7]    <u>Id.</u> ¶ 20.

were validated before Catalent Pharma began manufacturing.[8]

On February 2, 2024, the Debtors filed petitions for reorganization under chapter 11 of the Bankruptcy Code. On October 28, 2024, the Court confirmed the Debtors' First Amended Joint Chapter 11 Plan of Liquidation.[9] The Plan vested all the assets of the estate in RK Consultants, LLC, as the Liquidation Trustee.[10]

The Debtors scheduled the Defendants as having a contingent, unliquidated, and disputed claim of approximately $1.8 million;[11] Catalent Belgium filed a proof of claim in the amount of approximately 1.5 million Euros on May 17, 2024, which was beyond the claims bar date of April 24, 2024.[12]

On May 30, 2024, the Plaintiffs filed a complaint against the Defendants for breach of contract, objection to their claim, and equitable subordination of that claim (the "Complaint").[13] On February 2, 2025, the Defendants filed a Motion to Compel Arbitration and Dismiss the Complaint.[14] On April 9, 2025, the

---

[8]    Id. ¶ 24.

[9]    D.I. 523.

[10]   Id. ¶¶ 13, 50; D.I. 528 ¶ 2.

[11]   Id. ¶ 18.

[12]   Id. ¶¶ 3, 53-54.

[13]   Id. ¶ 1.

[14]   Adv. D.I. 28-29.

Plaintiffs filed a Motion for Leave to Amend the Complaint, inter alia, to add counts for fraudulent inducement and gross negligence.[15]  In response, the Defendants asserted that the Motion to Amend was untimely and futile because the new claims asserted by the Plaintiffs are also subject to arbitration.[16]  The Plaintiffs filed a Reply disputing those contentions.[17]  The Motions have now been fully briefed and are ripe for decision.[18]

## II.  <u>JURISDICTION</u>

The Bankruptcy Court has jurisdiction over all "proceedings arising under title 11 or arising in or related to a case under title 11."[19]  The filing of a proof of claim by a creditor subjects that creditor to the Bankruptcy Court's jurisdiction to adjudicate that claim and claims by the debtor against the creditor which are so interrelated to that claim as to be part of the claims adjudication process.[20]  The Court finds that the

---

[15]    Adv. D.I. 39-40.

[16]    Adv. D.I. 45.

[17]    Adv. D.I. 48.

[18]    Adv. D.I. 1 ¶¶ 29, 40, 48.

[19]    28 U.S.C. § 157(b)(1).

[20]    <u>Langenkamp v. Culp</u>, 498 U.S. 42, 44-45 (1990) (holding that a creditor who files a proof of claim subjects itself to the equitable jurisdiction of the bankruptcy court to adjudicate that claim and forfeits its right to a jury trial on a preference action which is related to the claim allowance process).

claims in the Plaintiffs' Complaint are core claims subject to the Court's jurisdiction because they involve an objection to a claim filed against the estate and counterclaims by the Plaintiffs, both of which are based on the parties' Agreements.[21]

Although Catalent does not consent to the entry of a final order or judgment by the Court if it is determined that the Court cannot enter a final order or judgment consistent with Article III of the United States Constitution,[22] it is not necessary for the Court to decide that issue at this time.  Even if the Court does not have constitutional authority to enter a final order, the Court does have authority to enter orders on preliminary matters to the extent they do not constitute a final adjudication.[23]  That includes specifically the authority of the

---

[21]   28 U.S.C. § 157(b)(2)(B) & (C), § 1334.

[22]   Adv. D.I. 3.  See Stern v. Marshall, 564 U.S. 462, 503 (2011) (holding that while the bankruptcy court had statutory authority to enter final judgment on core counterclaim, it lacked constitutional authority to do so); Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 683-84 (2015) (holding that the bankruptcy court may enter a final order without offending Article III so long as the parties consent, expressly or impliedly).

[23]   See O'Toole v. McTaggart (In re Trinsum Grp., Inc.), 467 B.R. 734, 738 (Bankr. S.D.N.Y. 2012) (holding that "both before and after Stern v. Marshall, it is clear that the bankruptcy court may handle all pretrial proceedings, including the entry of an interlocutory order dismissing fewer than all of the claims in an adversary complaint.") (citations omitted).  See also Am. Media Inc. v. Anderson Mgmt. Servs. (In re Anderson News, LLC), Civ. No. 15-mc-199-LPS, 2015 WL 4966236, at *1-2 (D. Del. Aug. 19, 2015) (holding that bankruptcy court's authority to enter final orders on non-core claims was not implicated where the

Court to determine whether the Complaint states a plausible claim on which relief can be granted.[24]


III. <u>STANDARD OF REVIEW</u>

    A.   <u>Rule 12(b)(6)</u>[25]

    Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."[26]  Under Rule 12(b)(6), a complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[27]

---

court entered an order denying summary judgment because that order was not a final order) (citing <u>Boyd v. King Par, LLC</u>, No. 1:11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) ("[E]ven if there is uncertainty regarding the bankruptcy court's ability to enter a final judgment . . . , that does not deprive the bankruptcy court of the power to entertain all pre-trial proceedings, including summary judgment motions.")).

[24]    <u>See</u> <u>Trinsum Grp.</u>, 467 B.R. at 738 (holding that the bankruptcy court may enter an interlocutory order dismissing fewer than all of the claims in an adversary complaint).

[25]    Fed. R. Civ. P. 12(b)(6).  The applicable Federal Rules of Civil Procedure are incorporated into the Federal Rules of Bankruptcy Procedure.  <u>See</u> Fed. R. Bankr. P. 7012.  Therefore, citations herein are to the Federal Rules of Civil Procedure.

[26]    Fed. R. Civ. P. 12(b)(6).

[27]    <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."[28]  Two working principles underlie this pleading standard:

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.  Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.[29]

Under this standard, a complaint must nudge claims "across the line from conceivable to plausible."[30]  The court must draw all reasonable inferences in favor of the plaintiff,[31] and the movant "bears the burden to show that the plaintiff's claims are not plausible."[32]

In weighing a motion to dismiss, the Third Circuit instructs courts to follow a three-part analysis.  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a

---

[28]    <u>Id.</u> at 570.

[29]    <u>Iqbal</u>, 556 U.S. at 663-64 (internal citations omitted).

[30]    <u>Twombly</u>, 550 U.S. at 570.

[31]    <u>See, e.g.</u>, <u>Alpizar-Fallas v. Favero</u>, 908 F.3d 910, 914 (3d Cir. 2018).

[32]    <u>UMB Bank, N.A. v. Sun Cap. Partners V, LP (In re LSC Wind Down, LLC)</u>, 610 B.R. 779, 783 (Bankr. D. Del. 2020).

claim.'"[33]   Second, the court must separate the factual and legal

elements of the claim, accepting all of the complaint's well-pled

facts as true and disregarding any legal conclusions.[34]   Third,

the court must determine whether the facts alleged in the

complaint are sufficient to show that the plaintiff has a

plausible claim for relief.[35]   After conducting this analysis,

the court may conclude that a claim has facial plausibility when

the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the alleged

misconduct.[36]

B.   <u>Rule 15</u>

Rule 15 governs motions to amend a complaint and provides:

(a) <u>Amendments Before Trial.</u>
    (1) <u>Amending as a Matter of Course.</u>  A party
    may amend its pleading once as a matter of
    course no later than:
        (A) 21 days after serving it, or
        (B) if the pleading is one to which
        a responsive pleading is required,
        21 days after service of a
        responsive pleading or 21 days
        after service of a motion under
        Rule 12(b), (e), or (f), whichever
        is earlier.
    (2) <u>Other Amendments.</u>  In all other cases, a

---

[33]   <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir.
2010) (quoting <u>Iqbal</u>, 556 U.S. at 675).

[34]   <u>Santiago</u>, 629 F.3d at 130.  <u>See also</u> <u>Fowler v. UPMC
Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).

[35]   <u>Santiago</u>, 629 F.3d at 130.

[36]   <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

> party may amend its pleading only with the
> opposing party's written consent or the
> court's leave. The court should freely give
> leave when justice so requires.[37]

The denial or grant of leave to amend is discretionary but "[i]n

the absence of any apparent or declared reason — such as undue

delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc. — the

leave sought should, as the rules require, be 'freely given.'"[38]

C.    Enforceability of Arbitration Provisions

There is a liberal federal policy favoring arbitration

agreements as evidenced by the Federal Arbitration Act ("FAA")

which provides that arbitration agreements "shall be valid,

irrevocable, and enforceable."[39]  Where a party asserts that a

---

[37]    Fed. R. Civ. P. 15(a).  See also Fed. R. Bankr. P. 7015
(providing that Rule 15 is applicable to adversary proceedings).

[38]    Foman v. Davis, 371 U.S. 178, 182 (1962).  See also Burtch
v. Opus, LLC (In re Opus East, LLC), 2013 WL 4478914, at *2
(Bankr. D. Del. Aug. 6, 2013) (noting that the "Third Circuit has
adopted a liberal approach to the amendment of pleadings")
(citations omitted).

[39]    Section 2 of the FAA provides:
        A written provision in any maritime transaction or a
        contract evidencing a transaction involving commerce to
        settle by arbitration a controversy thereafter arising
        out of such contract or transaction, or the refusal to
        perform the whole or any part thereof, or an agreement
        in writing to submit to arbitration an existing
        controversy arising out of such a contract,
        transaction, or refusal, shall be valid, irrevocable,

claim brought against it is subject to a valid arbitration provision, the Rule 12(b)(6) standard is applicable[40] and the Court can grant the motion where "it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause."[41]

To overcome enforcement of an arbitration provision, a party must establish congressional intent to create an exception to the FAA's mandate with respect to the party's statutory claims.[42] Congressional intent can be discerned in one of three ways: (1) the statute's text, (2) the statute's legislative history, or (3) "an inherent conflict between arbitration and the statute's underlying purposes."[43]

---

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.
9 U.S.C. § 2. _See also_ SFC New Holdings, Inc. v. The Earthgrains Co. (In re GWI, Inc.), 269 B.R. 114, 116-17 (Bankr. D. Del. 2001) (granting motion to stay adversary proceeding pending arbitration in accordance with provision of pre-petition purchase agreement).

[40]   _Palcko v. Airborne Express, Inc._, 372 F.3d 588, 597 (3d Cir. 2004).

[41]   _Guidotti v. Legal Helpers Debt Resol., L.L.C._, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations and citation omitted).

[42]   _Shearson/Am. Express Inc. v. McMahon_, 482 U.S. 220, 227 (1987) (holding that a court can deny enforcement of an arbitration agreement only if it can be shown that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue").

[43]   _In re Mintze_, 434 F.3d 222, 229 (3d Cir. 2006).

IV.   <u>DISCUSSION</u>

    A.   <u>Amendment to Complaint</u>

    The Plaintiffs' proposed amendment includes the substitution of the Liquidation Trustee for the Debtors' estates as the plaintiff and additional allegations related to their claims.[44] The Amended Complaint also adds two counts: fraudulent inducement and gross negligence.[45]

    The Defendants do not oppose the substitution of the Liquidation Trustee as plaintiff in this action.[46]  Because the causes of action belonging to the estates have been vested in the Liquidation Trustee by the confirmed Plan,[47] the Court will grant the Motion to Amend in that respect.

    1.   <u>Amendment as of Right</u>

    The Defendants argue that the Plaintiffs have no unilateral right to amend the Complaint under Rule 15(a)(1) because their motion was not filed within 21 days of the filing of the Defendants' Motion to Dismiss.[48]  Therefore, they contend that

---

[44]   Adv. D.I. 40-1.

[45]   <u>Id.</u> ¶¶ 95-107.

[46]   In fact, in their Motion to Compel Arbitration and to Dismiss, the Defendants admit that the Liquidation Trustee is the proper party/plaintiff.  Adv. D.I. 29 at 2.

[47]   <u>See</u> D.I. 523 ¶¶ 13, 50; D.I. 528 ¶ 2.

[48]   <u>Compare</u> Adv. D.I. 28 (filed February 3, 2025), <u>with</u> Adv. D.I. 39 (filed April 9, 2025).

the Plaintiffs must seek and obtain leave of this Court to amend the Complaint to add the additional allegations and claims.

The Plaintiffs argue that their Motion to Amend was timely because, after the Motion to Dismiss was filed, the parties agreed to several extensions of time for the Plaintiffs to respond to that Motion.[49]  Those extensions were approved by the Court[50] and the Plaintiffs' Motion to Amend was filed within the extended time to which the parties stipulated.[51]

The Defendants assert, however, that the agreement to extend the time to respond to the Motion to Dismiss did not extend the time to file a Motion to Amend the Complaint.  They argue that motions to amend are different from responses to motions: the former must be filed within 21 days while the latter are typically required to be filed within 14 days.[52]  The Defendants cite cases holding that an extension of time to respond to a motion to dismiss does not extend the time to amend the

---

[49]    Adv. D.I. 31, 36.

[50]    Adv. D.I. 32, 38.

[51]    Adv. D.I. 39-40.

[52]    Compare Fed. R. Civ. P. 15(a)(1) (requiring amendments to pleadings to be filed within 21 days), with Fed. R. Civ. P. 7 (listing pleadings allowed in response to a complaint, i.e., answers, counterclaims, third-party complaints, but not a motion to amend the complaint).  See also Del. Bankr. L.R. 7007-1(a)(ii) (requiring responses to motions filed in adversary proceedings to be filed within 14 days).

complaint.[53]

The Court notes that the cases cited by the Defendants are factually distinguishable from the instant case.  In those cases, there was no extension of time that expressly included an extension of the time to amend the complaint.[54]  In contrast, in this case, the parties' second extension stipulation expressly included an extension of the time to amend the Complaint.[55]

The Defendants argue, however, that the first stipulation did not include that language and that the 21 days to amend expired before the second stipulation for an extension was

---

[53]    See JJD Elec., LLC v. Sunpower Corp., Sys., No. 22-1275, 2023 WL 5665585, at *3 (D.N.J. Sept. 1, 2023) (holding that an extension of time to respond to a motion to dismiss does not extend the time to amend a complaint); Killion v. Cohen, No. 16-5356, 2017 WL 2426860, at *2 n.2 (D.N.J. June 5, 2017) ("While it is true that plaintiff sought and received two extensions of time to file a response to the motion to dismiss, these extensions did not act to extend the time for plaintiff to amend his complaint without leave of court under Rule 15(a)(1)(B)."); Ramos v. Aurora Loan Servs., No. 09-61938-CIV, 2010 WL 966856, at *1 (S.D. Fla. Mar. 15, 2010) (concluding that, although the plaintiff obtained an extension to file a response to defendant's motion to dismiss, his amended complaint was filed after the 21-day period under Rule 15(a)(1)(B) and thus was not a proper response to the motion).

[54]    JJD Elec., 2023 WL 5665585, at *3;  Killion, 2017 WL 2426860, at *2 n.2; Ramos, 2010 WL 966856, at *1.

[55]    Adv. D.I. 35 ("The Parties agree and stipulate that Plaintiffs' deadline to respond to Defendants' motion to compel arbitration and to dismiss, including, but not limited to, by filing a motion to amend the Complaint, is hereby continued and extended to and including April 9, 2025.").

approved.[56]  Therefore, they assert that the cases they cite are applicable and the first stipulation for an extension did not extend the time to amend the Complaint.

The Court agrees with the Defendants that the first extension did not extend the time to amend the Complaint as of right because it does not expressly stipulate to the extension of that time.[57]  Further, the second stipulation for an extension, which did purport to extend the time to amend the Complaint as of right, was not effective because it was not filed within the 21

---

[56]    Adv. D.I. 31 ("The Parties agree and stipulate that the Liquidating [sic] Trustee's deadline to respond to Defendants' Motion to Compel Arbitration and Dismiss [D.I. 28] in the above-captioned Adversary Case is hereby continued and extended to and including March 26, 2025.").  Adv. D.I. 35 (filed March 26, 2025, or 51 days after the Motion to Compel Arbitration and to Dismiss was filed).

[57]    Adv. D.I. 31.  The Plaintiffs assert that in asking for the first extension they advised the Defendants that they may file an Amended Complaint.  The Court does not consider this relevant because the Defendants did not consent to that extension.  Nor is it properly considered by the Court at this stage because it is not part of the allegations of the Complaint.  "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). See also Walker v. Elliott, Civil No. 4:10-CV-467, 2010 WL 4916715 (M.D. Pa. Oct. 25, 2010) (noting that "both parties are urging the Court to take cognizance of extensive facts outside the pleadings themselves, which in our view is not an appropriate course to follow when ruling upon a motion to dismiss"); Fosburg v. Lehigh Univ., No. CIV. A. 98-CV-864, 1999 WL 124458, at *2 (E.D. Pa. 1999) (holding that exhibits attached to motion to dismiss which "are neither undisputedly authentic nor referenced in Plaintiff's Complaint" should be considered in connection with the motion to dismiss).

days for an amendment of right to be filed.

### 2.   Amendment by Leave of Court

The Plaintiffs have nonetheless asked the Court for permission to amend the Complaint under Rule 15(a)(2) asserting that "justice so requires."[58]  They argue that permission to amend must be readily granted "absent any undue delay, bad faith, dilatory motives, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of amendment."[59]

The Defendants argue that the Court should not grant leave to amend under Rule 15(a)(2) to add the additional counts because the amendment would be futile.[60]  They assert that futility is apparent because the arbitration provision in the Supply Agreement is broad enough to cover the tort claims added by the

---

[58]   Fed. R. Civ. P. 15(a)(2) (if not filed within 21 days, a party may amend its pleading only with written consent of the opposing party or leave of court, which should be freely given "when justice so requires").

[59]   Foman, 371 U.S. at 182.  See also Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (holding that the administrative law judge had abused his discretion by failing to allow amendment of the complaint and noting that the rule allowing liberal amendment of pleadings "ensures that a particular claim will be decided on the merits rather than on technicalities.").

[60]   In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (in determining whether "justice . . . requires" granting leave to amend under Rule 15(1)(2), courts may consider whether the amendment would be futile, that is, whether it "would fail to state a claim upon which relief could be granted.").  See also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.").

amendment, as well as the breach of contract claims in the original Complaint.[61]  The Defendants further argue that it is up to the arbitrator, not this Court, to decide what is covered by the arbitration provision.[62]

The Plaintiffs respond that their proposed amendment of the Complaint would not be futile.  They contend that none of their claims against the Defendants are subject to arbitration.

Because the arguments about the arbitrability of the Plaintiffs' claims in the original Complaint and the proposed additional claims in the Amended Complaint are the same, the Court will address them together in the context of the Defendants' Motion to Dismiss.

B.    <u>Motion to Dismiss</u>

The Defendants seek to dismiss the breach of contract and tort claims in the Complaint and Amended Complaint primarily on the basis that those claims are subject to an arbitration clause

---

[61]    Adv. D.I. 1-1 § 18.10 (providing that the parties agree to arbitrate "[a]ny dispute that arises between the parties in connection with [the Supply] Agreement").  <u>See</u> <u>Halliburton & Assocs., Inc. v. Henderson, Few & Co.</u>, 774 F.2d 441, 445 (11th Cir. 1985) (finding amendment would be futile because claims were subject to arbitration agreement); <u>Kelly v. MBNA Am. Bank</u>, 528 F. Supp. 2d 490, 494 (D. Del. 2008) (denying motion to amend as futile because claims were subject to binding arbitration).

[62]    <u>See</u> Rule 8.1–.2, at 24 of the Int'l Inst. for Conflict Prevention & Resol., CPR Rules for Administered Arbitration of International Disputes (2019), https://tinyurl.com/4ytvrsjs (hereinafter the "CPR Rules").

in the Supply Agreement.[63]  To the extent the Court finds that
any of the Plaintiffs' claims are not subject to arbitration, the
Defendants ask the Court to stay those claims until arbitration
of the other claims has been concluded.[64]

If not stayed, the Defendants argue that the Plaintiffs'
equitable subordination claim should be dismissed because the
Plaintiffs do not allege any egregious misconduct which would
support such a claim.[65]  The Defendants finally contend that the
Plaintiffs' objection to their proof of claim as untimely should
be denied.[66]

---

[63]    Adv. D.I. 1-1 § 18.10 (providing that the parties agree to
arbitrate "[a]ny dispute that arises between the parties in
connection with [the Supply] Agreement"). See, e.g., Mintze, 434
F.3d at 233 (holding that bankruptcy court had no discretion and
must compel arbitration of a claim which was covered by a
contractual arbitration clause because there was no inherent
conflict between the FAA and the Bankruptcy Code).

[64]    Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S.
1, 20 n.23 (1983) (noting that "[i]n some cases, of course, it
may be advisable to stay litigation among the non-arbitrating
parties pending the outcome of the arbitration" and doing so is a
matter within the discretion of the trial court).

[65]    See In re Winstar Commc'ns, Inc., 554 F.3d 382, 411 (3d Cir.
2009) (holding that to state a claim for equitable subordination
of a claim, the claimant "must have engaged in some type of
inequitable conduct . . . [that] resulted in injury to the
creditors of the bankrupt or conferred an unfair advantage on the
claimant . . . and . . . subordination of the claim must not be
inconsistent with the provisions of the Bankruptcy [Code]."),
(quoting In re Mobile Steel Co., 563 F.2d 692, 699-700 (5th Cir.
1977)).

[66]    See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507
U.S. 380, 388-89 (1993) (holding that a claimant may file a proof
of claim after the bar date if it can show "excusable neglect,"

In its Reply, the Plaintiffs contend that (i) none of their claims against the Defendants are subject to arbitration, (ii) enforcing the arbitration clause with respect to their claims would undermine the purposes of the Bankruptcy Code, and (iii) if the Court determines that some of their claims are arbitrable, it should not stay the remaining core claims (including its objection to the Defendants' proof of claim and the equitable subordination of that claim).

### 1. Arbitration Provision

The Defendants' basis for asserting that the claims in the Complaint should be sent to arbitration is that the Supply Agreement between DMK and Catalent Belgium contains an arbitration clause. That clause provides:

> 18.10 Alternative Dispute Resolution. <u>Any dispute that arises between the parties in connection with this Agreement</u> shall first be presented to the senior executives of the parties for consideration and resolution. <u>If such executives cannot reach a resolution of the dispute within a reasonable time, then such dispute shall be resolved by binding alternative dispute resolution in accordance with the then existing commercial arbitration rules of the International Institute for Conflict Prevention and Resolution</u>, 575 Lexington Avenue, New York, NY 10022. Arbitration shall be conducted in New York, New York,

---

namely "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control") (citing Fed. R. Bankr. P. 9006(b)(1)); <u>Ellis v. Westinghouse Elec. Co.</u>, 11 F.4th 221, 232 (3d Cir. 2021) (holding that "[t]o avoid unnecessarily harsh results, a claimant can still file a claim after the bar date if [the claimant] shows 'excusable neglect.'").

USA, in the English language and the parties expressly
agree to waive any right to a recourse, such as an
appeal, against the decision rendered.[67]

### a.   Who Decides Arbitrability?

The Defendants contend that it is the province of the
arbitrators, not this Court, to decide the applicability and
extent of their right to arbitration.[68]  They note that the
arbitration provision incorporates the commercial arbitration
rules of the International Institute for Conflict Prevention and
Resolution, which they say expressly provides that the
arbitration tribunal "shall have the power to hear and determine
challenges to its jurisdiction, including any objections with
respect to the existence, validity or scope of the arbitration
agreement" and "the contract of which an arbitration clause forms
a part."[69]

The Plaintiffs dispute the Defendants' contention that it is
the arbitrator who must decide whether the claims are subject to
arbitration.  Instead, they contend that the arbitrability
question is to be decided by judges _unless_ the parties clearly

---

[67]   Adv. D.I. 1-1 § 18.10 (emphasis added).

[68]   _Henry Schein, Inc. v. Archer & White Sales, Inc._, 586 U.S.
63, 68 (2019) (holding that when parties agree to arbitrate the
threshold issue of arbitrability, "a court possesses no power to
decide the arbitrability issue" even if the court believes the
argument supporting arbitrability "is wholly groundless.").

[69]   Adv. D.I. 29 at 11, citing CPR Rule 8.1–.2, at 24.

agree that the issue is to be decided by the arbitrator.[70]  They assert that the Supply Agreement itself does not make it "clear and unmistakable" that the parties agreed that an arbitrator would decide issues of arbitrability relating to the Supply Agreement, let alone the Quality Agreement.  They argue that merely referencing the CPR Rules is not enough.  Further, they note that the CPR Rules themselves do not state that the arbitrator has the exclusive jurisdiction to decide the arbitrability issue; the Rules merely state that the arbitral tribunal has the power to decide the arbitrability issue.[71]

The Court agrees with the Plaintiffs that this Court has the power to decide the scope and applicability of the arbitration clause at issue here.  There is no "clear and unmistakable" provision in the parties' arbitration clause that gives the arbitral tribunal the exclusive jurisdiction to decide the arbitrability issue.[72]  Nor do the CPR Rules provide that the arbitral tribunal has the exclusive right to determine that

---

[70]   <u>Field Intel. Inc. v. Xylem Dewatering Sols. Inc.</u>, 49 F.4th 351, 356 (3d Cir. 2022) (holding that "parties may delegate threshold arbitrability issues to an arbitrator <u>provided there is 'clear and unmistakable' evidence they agreed to do so</u>") (emphasis added) (citing <u>First Options of Chic., Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995)).

[71]   <u>See</u> <u>supra</u> text accompanying note 69.

[72]   Adv. D.I. 1-1 § 18.10.

issue.[73]  Thus, the Court concludes that the parties have not

agreed that the arbitral tribunal has the exclusive jurisdiction

to decide what claims are subject to the arbitration clause.[74]

Therefore, the Court may decide that issue.

        b.   <u>Contract Claims</u>

    The Defendants argue that the contract claims for breach of

the Supply Agreement are clearly subject to arbitration by the

express terms of the arbitration provision in the Supply

Agreement.  The Defendants also contend that, while the Quality

Agreement does not contain an arbitration clause, the breach of

contract claims related to that Agreement are also covered by the

Supply Agreement arbitration provision.  They point to the Supply

Agreement's integration provision that expressly incorporates the

Quality Agreement[75] and to the Quality Agreement itself which

---

[73]  <u>Compare</u> CPR Rule 8.1–.2 at 24 (the arbitration tribunal
"<u>shall have the power</u> to hear and determine challenges to its
jurisdiction, including any objections with respect to the
existence, validity or scope of the arbitration agreement"), <u>with</u>
<u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 U.S. 63, 67 (2010)
(holding that the parties had agreed to arbitrate 'gateway'
questions of 'arbitrability' by providing that "<u>[t]he Arbitrator,
and not any federal, state, or local court or agency, shall have
**exclusive** authority</u> to resolve any dispute relating to the
interpretation, applicability, enforceability or formation of
this Agreement") (emphasis added).

[74]  <u>Field Intel.</u>, 49 F.4th at 356 (requiring "clear and
unmistakable" evidence that the parties agreed to arbitrate the
gateway issues of what is arbitrable under their agreement).

[75]  Adv. D.I. 1-1 § 18.1 (the Supply Agreement, "together with
the Quality Agreement . . . , constitutes the entire
understanding between the parties.").

expressly references, and is subject to, the Supply Agreement.[76]

The Defendants contend that, while the Quality Agreement was executed by Catalent Pharma, it did so as an agent of Catalent Belgium and as part of Catalent Belgium's performance under the Supply Agreement.[77] They rely on the Supply Agreement which specifically provided that Catalent Belgium had the right to cause any of its affiliates to perform its obligations under the Supply Agreement and defined its affiliates to include Catalent Pharma.[78]

Therefore, the Defendants argue that any disputes under the Quality Agreement are also subject to the arbitration provisions of the Supply Agreement.

---

[76]    Adv. D.I. 1-2 at 3, 8 (providing that the Quality Agreement "is subject to the terms of a Services Agreement," which it defines as "the agreement entered into between Catalent and [Adamis] which sets forth the terms and conditions agreed between the parties governing the provision of services by Catalent on behalf of [Adamis], including but not limited to supply agreements.").

[77]    The Supply Agreement specifically obligates Catalent Belgium to "enter into a quality or technical agreement [with Adamis] on Catalent's standard template (the 'Quality Agreement')" within six months.  Adv. D.I. 1-1 § 9.6.  The Defendants also note that the Quality Agreement, which purportedly was between Adamis and Catalent Pharma, was executed only by executives of Catalent Belgium.  Adv. D.I. 1-2 at 2.

[78]    Adv. D.I. 1-1 § 1.9 (Catalent Belgium "ha[s] the right to cause any of its Affiliates to perform any of its obligations" under the CSA, and Adamis must "accept such performance as if it were performance by Catalent [Belgium].", § 1.2 ("Affiliates" means, "with respect to Catalent [Belgium], Catalent Pharma Solutions, Inc. and any company, corporation, firm, partnership or other entity controlled by it.").

The Plaintiffs respond that the Quality Agreement has no arbitration provision and therefore the claims for breach of that Agreement are not subject to mandatory arbitration.  They dispute the Defendants' contention that the reference in the Supply Agreement to a quality agreement to be executed by the parties within six months[79] has any relationship to the Quality Agreement at issue, which was entered five years after the Supply Agreement was executed.[80]

The Court rejects the Plaintiffs' argument on this point. The Supply Agreement clearly contemplated that a quality agreement would be subsequently executed by the parties.[81]  There is no evidence that the parties entered into any quality agreement relating to SYMJEPI other than the one dated 2020, which is the only one referenced in the Plaintiffs' Complaint.[82]

---

[79]   Adv. D.I. 1-1 § 9.6 ("Within 6 months after the Effective Date, and in any event prior to the first Processing of Product hereunder, the parties shall negotiate in good faith and enter into a quality or technical agreement on Catalent's standard template (the "Quality Agreement").").

[80]   Adv. D.I. 1-1 (effective August 3, 2015); Adv. D.I. 1-2 (effective May 18, 2020).

[81]   Adv. D.I. 1-1 § 9.6.

[82]   Adv. D.I. 1 ¶ 20 ("On May 18, 2020, Plaintiff Adamis Pharma and Defendant Catalent Pharma subsequently executed a Quality Agreement (the "Quality Agreement") for, among other things, the manufacturing, release testing, and stability testing of SYMJEPI."), ¶ 22 ("The Quality Agreement was subject to the terms of the Supply Agreement."), ¶ 23 ("The Supply Agreement and Quality Agreement concerned Catalent's manufacture of SYMJEPI").

Further, the Quality Agreement dated 2020 references service
agreements, including supply agreements, between the parties.[83]
Again, the Complaint makes no reference to any other such
agreements between the parties, other than the Supply
Agreement.[84]  Therefore, the Court concludes that the Quality
Agreement dated 2020 is the agreement referenced in the parties'
Supply Agreement and that the Supply Agreement dated 2015 is the
agreement referenced in the parties' Quality Agreement.

The Plaintiffs argue further, however, that while the
Quality Agreement makes reference to a supply agreement it does
not expressly incorporate the arbitration provision of that

---

[83]    Adv. D.I. 1-2 at 3 ("This Quality Agreement is subject to
the terms of a Services Agreement (defined below). In the event
of a conflict between the provisions of this Quality Agreement
and the Services Agreement with respect to quality-related
activities outlined in this Quality Agreement, including
responsibility for compliance with cGMP, this Quality Agreement
shall control.  In the event of a conflict between the Services
Agreement and this Quality Agreement relating to allocation of
risk, financial responsibility and liability, the provisions of
the Services Agreement shall control."), 8 ("Services Agreement"
shall mean the agreement entered into between Catalent and [DMK]
which sets forth the terms and conditions agreed between the
parties governing the provision of services by Catalent on behalf
of [DMK], including but not limited to supply agreements,
standard or negotiated terms and conditions, master clinical or
commercial services agreements, development and manufacturing
agreements (collectively referred to herein as "Services
Agreement")").

[84]    Adv. D.I. 1 ¶ 19 ("On August 3, 2015, Plaintiff Adamis
Pharma and Defendant Catalent Belgium S.A. entered into the
Supply Agreement providing for, among other things, the
manufacture of SYMJEPI."). See also id. ¶¶ 1, 21-23, 47-48, 58-
59.

agreement and, instead, expressly provides that the Quality Agreement will control in the event of any conflict between it and the Supply Agreement over quality issues.[85]  The Plaintiffs contend that their claims are premised on the quality issues it experienced with the SYMJEPI product.  Therefore, they argue that there is no clear and unambiguous intent to incorporate the arbitration clause from the Supply Agreement into the Quality Agreement.[86]

The Court disagrees with the Plaintiffs' contention.  While it is true that both the Quality Agreement and the Supply Agreement provide that the terms of the Quality Agreement control quality issues,[87] both of those Agreements state that the terms

---

[85]    Adv. D.I. 1-2 at 3 ("In the event of a conflict between any of the provisions of this Agreement and the Quality Agreement with respect to quality-related activities, including compliance with cGMP, the provisions of the Quality Agreement shall govern.").

[86]    Bacon v. Avis Budget Grp., Inc., 959 F.3d 590, 600 (3d Cir. 2020) (quoting Albert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 533 (App. Div. 2009)) ("'[F]or there to be a proper and enforceable incorporation by reference of a separate document [under New Jersey law],' (1) the separate document 'must be described in such terms that its identity may be ascertained beyond reasonable doubt' and (2) 'the party to be bound by the terms must have had knowledge of and assented to the incorporated terms.'" ); Pie Chuang v. OD Expense, LLC, 243 F. Supp. 3d 553, 556 (D. Del. 2017) (declining to compel arbitration where arbitration clause in subscription agreement between the parties was not clearly incorporated by reference into the parties' supply agreement), aff'd, 742 F. App'x 670 (3d Cir. Aug. 1, 2018).

[87]    Adv. D.I. 1-1 § 9.6 ("In the event of a conflict between any of the provisions of this Agreement and the Quality Agreement

of the Supply Agreement govern the commercial issues, including
the allocation of risk, financial responsibility, and liability
issues.[88]   The Court concludes that the forum for resolution of
the parties' disputes about breach of those Agreements is not a
quality issue, but rather is a commercial issue related to "the
allocation of risk, financial responsibility and liability."[89]
Therefore, the Court finds that the parties intended that the
Supply Agreement terms, including the arbitration provision,
govern which forum will decide the breach of contract claims.

    c.   <u>Tort Claims</u>

The Plaintiffs nonetheless argue that compelling arbitration
of their tort claims is not mandated by the terms of the Supply
Agreement's arbitration provision as they are based on common law
principles, not the Agreement's terms.

---

with respect to quality-related activities, including compliance
with cGMP, the provisions of the Quality Agreement shall
govern."); Adv. D.I. 1-2 at 3 ("In the event of a conflict
between the provisions of this Quality Agreement and the Services
Agreement with respect to quality-related activities outlined in
this Quality Agreement, including responsibility for compliance
with cGMP, this Quality Agreement shall control.").

[88]   Adv. D.I. 1-1 § 9.6 ("In the event of a conflict between any
of the provisions of this Agreement and the Quality Agreement
with respect to any commercial matters, including allocation of
risk, liability and financial responsibility, the provisions of
this Agreement shall govern."); Adv. D.I. 1-2 at 3 ("In the event
of a conflict between the Services Agreement and this Quality
Agreement relating to the allocation of risk, financial
responsibility and liability, the provisions of the Services
Agreement shall control.").

[89]   <u>Id.</u>

The Court disagrees because the terms of the arbitration provision are broad enough to encompass the tort claims. That provision states that "[a]ny dispute that arises between the parties in connection with this Agreement" is subject to arbitration.[90] The Amended Complaint's tort claims (for fraudulent inducement and for gross negligence) relate to the Defendants' performance of the Quality Agreement.[91] Therefore, the Court concludes that those claims are also subject to the arbitration provision.

    d.    Objection to, and Subordination of, Claims

The Plaintiffs contend, however, that requiring arbitration of their objection to, and request for subordination of, the Defendants' claim would conflict with the purposes of the Bankruptcy Code which mandate that it is this Court which must hear and decide those core claims.[92]

---

[90]    Adv. D.I. 1-1 § 18.10.

[91]    Adv. D.I. 40-1 at ¶¶ 95-107.

[92]    11 U.S.C. § 502(b) (when an objection is filed to a proof of claim, "the court . . . shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount" subject to certain enumerated exceptions), § 510(c)(1) (providing that "the court may . . . subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim"). See also 28 U.S.C. § 157(b)(2)(B) & (C) (providing that the allowance or disallowance of a claim and counterclaims by the estate to such claims are core proceedings within the jurisdiction of the bankruptcy courts); DMK Pharm. Corp. v. USWM, LLC (In re DMK Pharm. Corp.), Adv. No. 25-50071 (MFW), 2025 WL 1212573, at *1 (holding that the claims in the debtors' complaint were core

The Defendants respond that there is a substantial overlap in legal and factual issues among all the contract and tort claims and that the arbitrator's decision would decide many of those issues. Therefore, they suggest that the Plaintiffs' objection to their claim and equitable subordination count should be stayed pending resolution of the arbitration.

The Court agrees with the Plaintiffs that it is this Court's obligation to determine the allowance and priority of claims against the estate. However, that does not mean that it must deny enforcement of a valid arbitration clause. The claim objection itself includes issues related to the breach of contract and tort claims, which the Court has concluded are subject to arbitration. The Court also finds that, because the Plaintiffs' claim for equitable subordination is premised on the alleged inequitable conduct of the Defendants in performing the Agreements, it too is dependent on resolution of the issues the parties agreed to arbitrate.[93]

---

claims subject to the court's jurisdiction because they involved claims against the estate and counterclaims related to the same contract).

[93]    Adv. D.I. 1 ¶¶ 61-67. <u>Cf.</u>, <u>Skernklar v. Heritage Auction Galleries, Inc. (In re Rarities Grp., Inc.)</u>, 434 B.R. 1, 11 (D. Mass. 2010) (reversing bankruptcy court's denial of arbitration because arbitration of claims, including equitable subordination, which are based on pre-petition contracts would not jeopardize the objectives of the Bankruptcy Code and was mandated).

Therefore, the Court concludes that the Defendants' suggestion makes sense.  The Court can stay the ultimate allowance of the Defendants' claim until after the arbitration has resolved the issues related to the other arbitrable claims.

        e.   Alleged Conflict with Bankruptcy Code

The Plaintiffs argue nonetheless that, because the contract and tort claims are inextricably related to the claim objection and subordination (which the Defendants acknowledge), there is "an inherent conflict between the arbitration and the statute's underlying purposes"[94] which mandates that the Bankruptcy Court exercise its discretion and deny arbitration of all of the claims in the Amended Complaint.[95]

---

[94]   Mintze, 434 F.3d at 229 (quoting McMahon, 482 U.S. at 227).

[95]   See, e.g., In re Eber, 687 F.3d 1123, 1131 (9th Cir. 2012) (affirming denial of motion to compel arbitration where bankruptcy court found that compelling arbitration would result in arbitrator's decision potentially collaterally estopping the bankruptcy court from deciding dischargeability issues under § 523(a) of the Bankruptcy Code); In re Thorpe Insulation Co., 671 F.3d 1011, 1022-23 (9th Cir. 2012) (affirming denial of motion to compel arbitration where plaintiff's proof of claim and debtor's objection to claim were "inextricably intertwined" with matters the bankruptcy court would have to decide in connection with debtor's reorganization and issues related to § 524(g)), cert. denied, 568 U.S. 815; Grant v. Cole (In re Grant), 281 B.R. 721, 725 (Bankr. S.D. Ala. 2000) (denying arbitration of debtor's complaint to hold defendant in contempt for violation of the automatic stay and discharge injunction because it would be in conflict with core principles of the Bankruptcy Code).

The party opposing arbitration must establish that enforcing it conflicts with an inherent Bankruptcy Code principle.[96]  While the Court agrees with the Plaintiffs that the allowance of claims against the estate and their order of priority is a core task of the Bankruptcy Court, that alone does not justify vitiating the parties' agreement to arbitrate their disputes.[97]  The cases cited by the Plaintiffs are distinguishable because they involved claims that directly impacted rights expressly created by the Bankruptcy Code (the automatic stay under section 362, the discharge under section 523, and channeling rights under section 524(g)).[98]  There is no such effect in this case.

Here, the Defendants' proof of claim, and the Plaintiffs' objection to that claim, are premised on the allegations of breach of contract and the tort claims related to the performance

---

[96]   McMahon, 482 U.S. at 226-27 ("Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command.  The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.").

[97]   Mintze, 434 F.3d at 229 (concluding that the "core/non-core distinction does not, however, affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement").

[98]   See supra note 95.  The Plaintiffs also cite this Court's decision in the Plaintiffs' adversary proceeding against USWM for the proposition that the debtors' claims against the defendant were core where the defendant filed a proof of claim.  DMK Pharm., Adv. No. 25-50071 (MFW), Adv. D.I. 28 at 3-4.  However, that case did not deal with the enforceability of an arbitration clause.  Id.

of the Agreements, not on any provision of the Code.  Enforcing

an arbitration provision with respect to a pre-petition breach of

contract or related tort claim does not conflict with an inherent

Bankruptcy Code principle.[99]

Therefore, the Court concludes that there is no inherent

conflict between the Bankruptcy Code and enforcement of the

arbitration provision as to the breach of contract and tort

claims in this case.  Because the Plaintiffs' objection to the

Defendants' proof of claim and its request for equitable

subordination of that claim are premised in part on the

arbitrable claims,[100] the Court will stay a resolution of those

claims until the arbitration concludes.

---

[99]    Mintze, 434 F.3d at 231-32 (finding no inherent conflict
between the FAA and the Bankruptcy Code and concluding that
arbitration provision in loan agreement precluded court from
determining debtor's rescission, Truth in Lending and other
consumer protection claims related to that agreement).  See also
Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885
F.2d 1149, 1157 (3d Cir. 1989) (holding that arbitration was
mandated in non-core breach of contract action because "as we
have already noted, the text of the Bankruptcy Code embodies the
principle that pre-petition contract rights are enforceable in a
bankruptcy proceeding except to the extent the Code specifically
provides otherwise and there are no contrary provisions
applicable to this situation.").

[100]    The objection to the Defendants' claim also raises an issue
about the timeliness of the claim.  A decision on that issue is
within the Court's equitable powers.  See Pioneer, 507 U.S. at
388-89 (holding that a late-filed proof of claim can be allowed
if the claimant can show "excusable neglect").

V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the Motion for Leave to Amend solely to allow the substitution of the Liquidation Trustee as the party/plaintiff.  The Court will deny the Motion for Leave to Amend filed by the Plaintiffs in all other respects as futile because all of the claims which the Plaintiffs seek to add to the Complaint are subject to the parties' agreement to arbitrate.  The Court will grant the Motion to Compel Arbitration filed by the Defendants with respect to the breach of contract claims in Count I because they are subject to the parties' arbitration agreement.  Finally, the Court will stay Count II(the objection to Catalent Belgium's claim) and Count III (the equitable subordination of that claim) of the Complaint until the arbitration of the other claims is concluded.

An appropriate order is attached.


Dated: August 14, 2025        BY THE COURT:

                              Mary F. Walrath
                              United States Bankruptcy Judge